# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### SEPTEMBER 1999 SESSION

FILED

October 31, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 02C01-9901-CC-00018 |
| Appellee, | ) | |
| | ) | MADISON COUNTY |
| VS. | ) | |
| | ) | HON. FRANKLIN MURCHISON, |
| PHILLIP DAVID HOWELL, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Revocation of Judicial Diversion) |

**FOR THE APPELLANT:**

**MIKE MOSIER**
204 West Baltimore
P.O. Box 1623
Jackson, TN 38302-1623
(On Appeal)

**STEVE BEAL**
22 Monroe Avenue
Lexington, TN 38351-2135
(At Hearing)

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**R. STEPHEN JOBE**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JAMES G. (JERRY) WOODALL**
District Attorney General

**LAWRENCE E. (NICK) NICOLA**
Assistant District Attorney General
225 Martin Luther King Drive
P.O. Box 2825
Jackson, TN 38302-2825

**OPINION FILED:** _____


**REVERSED AND REMANDED**


**JOE G. RILEY, JUDGE**

**OPINION**

Pursuant to a negotiated agreement, defendant pled guilty to aggravated criminal trespass and assault, Class A misdemeanors, and the trial court placed him on judicial diversion pursuant to Tenn. Code Ann. § 40-35-313. Subsequently, the trial court found defendant in violation of his probation, revoked judicial diversion, and imposed sentence. In this direct appeal, defendant challenges the revocation. After a careful review of the record, we **REVERSE** the decision of the trial court and **REMAND** for further proceedings.

## I. FACTS

The victim of the underlying offenses (aggravated criminal trespass and assault) was the wife of the defendant. At the time of the plea, divorce proceedings were pending in the Chancery Court. In September 1997, defendant entered into a negotiated plea agreement which provided for his placement on judicial diversion pursuant to Tenn. Code Ann. § 40-35-313. The diversion plan included the following special condition of probation: "abide by all present and future orders of this Court and of the Chancery Court of this district."

The agreement was signed by the assistant district attorney, defense counsel, and defendant. At the time of this plea's entry, defendant was under a Chancery Court order which required payment of $1,000 per month in *pendente lite* alimony to his wife. It is undisputed that these payments were not made. Defendant contends there is no proof that his failure to pay was willful.

The trial court determined that defendant's failure to pay alimony operated as a violation of the Chancery Court's order, which in turn violated his terms of probation ("abide by all . . . orders . . . of the Chancery Court.") Hence, the trial

2

court revoked judicial diversion and eventually sentenced him for each conviction.[1]

## II. CONDITION OF PROBATION

Defendant challenges the reasonableness of the condition of probation requiring him to abide by orders of the Chancery Court. The state maintains that defendant waived this complaint since the terms of his diversion were the result of a negotiated plea agreement.

A trial court placing an offender on probation has the authority to impose special conditions upon that probation. Tenn. Code Ann. § 40-35-303(d). Special conditions may include a requirement that the offender meet his or her family obligations. Tenn. Code Ann. § 40-35-303(d)(1).

Since the record in this case does not contain a transcript of the guilty plea, we must assume that the state is correct in its argument that defendant agreed to the challenged condition of probation. On its face that provision states that defendant will abide by all orders of the Chancery Court. At the time he pled guilty, there existed a Chancery Court order that, among other things, required the payment of temporary alimony to his wife.

## III. PROBATION REVOCATION

---

[1]The trial court conducted two revocation hearings in this matter, May 1998 and August 1998. The trial court also conducted two sentencing hearings, September 1998 and December 1998.

A trial court may revoke probation and order the imposition of the original sentence upon a finding, by a preponderance of the evidence, that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, 311. The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation is subject to an abuse of discretion standard of review, rather than a *de novo* standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation has occurred. *Id.*; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). These same standards apply in determining a judicial diversion revocation based upon an alleged violation of probation.

Defendant contends that the record does not reflect that his failure to pay alimony was willful. The findings of the trial court regarding the basis for revoking defendant's probation are somewhat confusing. At the August 1998 revocation proceeding, the trial court found that defendant failed to make alimony payments as ordered by the Chancery Court. But, when pressed to determine whether such non-payment was willful, the court stated, "I don't think I have to find him in willful contempt. I just have to find that he hasn't followed -- he hasn't held up his end of the bargain. And he knew about this alimony."

In the September 1998 proceeding, the trial court seemed to indicate that perhaps defendant could not pay the alimony, but that such inability was irrelevant:

> TRIAL
> COURT:     [Defendant had] a chance to get out of
>            this without a criminal record, and he blew
>            that. Perhaps he couldn't help -- I
>            shouldn't say "blew it," because maybe he
>            couldn't pay. If you can't pay, you can't
>            pay. But that's passed.

Shortly after, in the same proceeding, the following exchange occurred:

> DISTRICT
> ATTORNEY:        We have shown that his

4

>                    noncompliance with [the
>                    Chancery Court's] order is
>                    willful.
>
>     TRIAL
>     COURT:              I have already found that.

Our review of the record does not indicate a prior specific finding of willful non-compliance. Furthermore, there is no written order of revocation from which to clarify the remarks of the trial court.

The trial court revoked defendant's probation for failure to pay alimony as ordered by the Chancery Court. In this particular situation, we respectfully disagree with the trial court's statement that it did not have to find defendant in willful non-compliance with the Chancery Court order so as to justify the revocation of probation.

The mere existence of an alimony order does not signify an ability to pay. If, in fact, defendant was financially unable to make alimony payments, then he would not be in willful non-compliance with the Chancery Court's order, and probation cannot be revoked for that reason. *See generally* Bearden v. Georgia, 461 U.S. 660, 672-73, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983); State v. Dye, 715 S.W.2d 38, 40 (Tenn. 1986).

Although there was some proof concerning defendant's bank account from which the trial court might have found willful non-compliance, we are unable to determine whether the trial court actually found willful non-compliance. Since such a finding is necessary, we must reverse defendant's revocation and remand for a new revocation hearing.[2]

## IV. RECOMMENDATION UPON REMAND

---

[2]We note that the trial judge who originally conducted these proceedings is now retired. Thus, it would not appear feasible to simply remand for findings.

5

In its brief, the state cites to this Court's decision in State v. Dominic Jude Amari, C.C.A. No. 01C01-9703-CR-00077, Tenn. Crim. App. 1998 LEXIS 682, (Tenn. Crim. App. filed June 30, 1998, at Nashville) in support of its argument that revocation based upon violation of another court's order is proper. In that case, the defendant entered into a judicial diversion agreement which required him to "abide by all orders of any court with domestic jurisdiction." The circuit court with civil jurisdiction found defendant in criminal contempt for discussing divorce matters in the presence of his minor son. At a later date, the criminal court revoked defendant's probation on the basis that he "violated the order of the circuit court respecting his domestic case." This Court upheld the probation revocation, stating, "the evidence of appellant's contempt order was sufficient to support the trial court's decision to revoke his probation." Dominic Jude Amari, 1998 LEXIS 682, at *3. We note, however, that unlike the case at bar, in Amari the criminal court had a prior finding of *criminal contempt* by the civil court upon which to base it's probation revocation.

We cannot help but note that it appears questionable whether the trial court and defense counsel shared the state's understanding of the challenged provision's effect. It is apparent from the record that the language of the provision was included by the prosecutor for the *primary* purpose of enforcing the Chancery Court's alimony order. The assistant district attorney (ADA) stated at the May 1998 revocation proceedings, "as far as . . . the [Chancery Court's] order [requiring defendant] to make alimony payments . . . the State was aware of this situation, and that is why we put in the orders 'to abide by all future and present orders of the Chancery Court.'"

The victim testified at the August 1998 revocation proceeding that she and the ADA thoroughly discussed the challenged condition of probation in the context of her desire to receive alimony payments:

6

DEFENSE
COUNSEL:    [the ADA] advised you at that time that you couldn't put in there that [defendant] would have to pay alimony as a part of this [plea] agreement?

VICTIM:      He said that we could put in there that he had to obey all other Court orders . . . or any . . . order in Chancery Court.

DEFENSE
COUNSEL:    Now, mainly what you were speaking about was concerning the staying away from you --

VICTIM:      No, sir. My big concern was the alimony.

In both the August and September hearings, the ADA confirmed that enforcement of the alimony order was the intent of the provision.

At the September 1998 sentencing proceeding, the ADA discussed the state's desire that defendant be placed "under the gun" of the criminal court:

"[T]he State of Tennessee doesn't have [defendant] under the gun in Chancery Court. The State of Tennessee is in here hoping to have him under the gun in this court. We can only have him under the gun in the criminal case, and that's what we are asking Your Honor to do -- is to keep him under the gun also in the criminal case."

However, defense counsel made various statements evidencing a different understanding of the provision's effect. At the May 1998 proceeding, defense counsel stated:

"It was our understanding . . . that we were to abide by the portions . . . [related to] the situation to stay away from her -- the Order of Protection and the Restraining Orders. . . I did not advise him . . . that this order involved him having to pay alimony payments as part of his plea agreement on this criminal charge."

. . .

"When [the ADA] and I were negotiating this . . . [the ADA] was interested . . . concerning the Restraining Orders and . . . keeping [the parties] separated . . . that's what we understood [to be] the gist of it . . . I was pretty much flabbergasted by what was being brought up in the Court. I had no idea that [the alimony order] would be relevant."

Defense counsel also made similar statements at both the August and September proceedings.

Similarly, the trial court stated at the May 1998 proceeding:

"[Defendant] may not have understood that he had that [obligation]. Okay. . . . You know -- this is kind of -- maybe a tough situation for [defendant] because you start crisscrossing a divorce case with a criminal case like this, and it can be pretty difficult and cause some problems. It has in his case."

At the August 1998 proceeding the trial court stated:

"This is something unusual – a broad statement saying that my probation is based upon [defendant] following some rules of some other Court. . . . The Chancery Court has got their business, and we've got our business. . . . Here -- somebody got this thing in here about the Chancery Court and . . . everybody agreed to it, and that's the way it went down."

The trial court's frustration is particularly apparent in its statement at the September 1998 sentencing:

"I'll be honest with you . . . *if I had thought more, I probably would never have approved this in the first place . . . .*" (Emphasis added.)

In fact, the trial court in sentencing defendant after the revocation declined to impose this same requirement as a condition of probation.

That is not to say that a criminal court cannot make compliance with another court's orders a condition of probation. However, in cases where civil divorce matters and criminal matters become entwined, we suggest it is far preferable that the civil court be given an opportunity to adjudicate it's own contempt matters before the criminal court uses violation of the civil court order as a basis for probation revocation. *See generally* Dominic Jude Amari, *supra*.

We share the frustration of the trial judge who found himself conducting several proceedings relating to the non-payment of alimony as ordered by the Chancery Court. The underlying charges in criminal court were aggravated criminal trespass and assault. We also understand the frustration of the victim who was unable to receive the alimony as ordered by the Chancery Court. Nevertheless, it does not appear to be in the interest of justice to put a defendant "under the gun" of the criminal court to adjudicate any and all issues relating to civil litigation in another court. At the very least, the criminal court, under these circumstances, has

8

discretion as to whether to proceed with a revocation hearing prior to an adjudication by the civil court. However, since all probationers are required to abide by the law, a finding of criminal contempt by the civil court can certainly be used as a basis for revocation.

## V.  CONCLUSION

Based upon the foregoing, we **REVERSE** the probation revocation and termination of judicial diversion and **REMAND** for further proceedings.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**DAVID G. HAYES, JUDGE**

_____
**THOMAS T. WOODALL, JUDGE**